# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

**SAM HAN,**

       **Plaintiff,**

**-v-**

**UNIVERSITY OF DAYTON, et al.**

       **Defendants.**

**Case No. 3:12-cv-140**

**Judge Thomas M. Rose**

_____

### ENTRY AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS HAN'S SECOND AMENDED COMPLAINT (Doc. #26) AND OVERRULING HAN'S RULE 56(d) MOTION (Doc. #28)

_____

The Plaintiff in this matter is Dr. Sam Han ("Han"). The named Defendants are the University of Dayton ("UD"), the University of Dayton School of Law[1] ("UDSL"), Paul McGreal[2] ("McGreal"), Harry Gerla ("Gerla"), Susan Brenner ("Brenner"), Rebecca Cochran ("Cochran"), Dennis Greene ("Greene"), Cooley Howarth ("Howarth") and Dale Searcy ("Searcy")(collectively referred to herein as the Defendants).

Han initially filed a complaint in the Court of Common Pleas of Montgomery County, Ohio in 2011 (the "2011 State Case"). The Defendants moved to dismiss and for summary judgment and Han filed an amended complaint. The Defendants then filed a motion to dismiss the amended complaint and a motion for summary judgment on the amended complaint which are currently pending.

_____

[1]UDSL is a part of UD and not a separate legal entity.

[2]McGreal was the new Dean of UDSL and attempted to mediate the decision not to renew Han's teaching contract after the former Dean had left. (SAC. ¶ 171.)

Han then filed a new lawsuit in the Court of Common Pleas of Montgomery County, Ohio (the "2012 State Case") and sought to have it consolidated with the already pending lawsuit. The new lawsuit is against the same Defendants named in the original lawsuit, and includes nothing but federal and state law discrimination claims.

Before Han's attempt at consolidation could be properly entertained by the Court of Common Pleas of Montgomery County, Ohio, the Defendants removed the 2012 State Case to this Court based upon this Court having federal question jurisdiction. Han then amended the complaint that was removed to include all of the state law claims that were in the initial complaint that he filed in the Court of Common Pleas of Montgomery County, Ohio.

The Defendants then moved to dismiss Han's Amended Complaint.  Han responded to Defendants' Motion To Dismiss, submitted a Rule 56(d) Motion and also submitted a Motion for Leave To File a Second Amended Complaint ("SAC"). This Court granted Han's Motion for Leave To File a SAC and found Defendants' Motion To Dismiss and Han's Rule 56(d) Motion moot. It is Han's SAC that is now before the Court to be adjudicated.

Han's SAC alleges twelve (12) causes of action. Count I is against all Defendants for race -based discrimination in violation of 42 U.S.C. § 1981 and against the employer Defendants for raced-based discrimination in violation of 2000e et seq. Count II is against the employer Defendants for gender-based discrimination in violation of 42 U.S.C. § 2000e et seq. Count III is against all Defendants for discrimination in violation of Ohio Rev. Code § 4112 et seq. Count IV is against UD for breach of contract. Count V is against all Defendants for promissory estoppel. Count VI is against all Defendants for fraud. Count VII is against Gerla, Brenner, Cochran, Greene, Howarth and Searcy for tortious interference with contract. Count VIII is for reliance

damages. Count IX claims respondeat superior. Count X is for bad faith, Count XI is for attorneys' fees and Count XII is for punitive damages.

The Defendants have moved to dismiss Han's SAC. (Doc. #26.) Han responded with a Memorandum In Opposition (doc. #27) and a Rule 56(d) Motion (doc. #28). The Defendants have replied to their Motion To Dismiss (doc. #26) and have responded to Han's Rule 56(d) Motion (doc. #30). Han has replied to his Rule 56(d) Motion. (Doc. #31.) Thus, Defendants' Motion To Dismiss and Han's Rule 56(d) Motion are ripe for decision.

## RELEVANT FACTUAL BACKGROUND

In the context of a motion to dismiss, the Court must accept as true all of the factual allegations contained in the complaint. Han's Second Amended Complaint includes the following factual allegations:

Han is a 42-year-old Asian-American male. (SAC ¶ 5.) He was hired by UD to teach at UDSL in the area of patent law. (Id. ¶ 6.) He subsequently retained that position on annual teaching contracts until May of 2011. (Id. at ¶¶ 24, 367.) Han's contract with UD expressly incorporates by reference the University's Faculty Policy & Governance Handbook (the "Faculty Handbook"). (Id. at ¶ 123.)

Han has received accolades from his peers and outstanding evaluations from his students. (Id. ¶¶ 7, 10.) Further, Han has published more articles than all but one of the members of his Promotion, Retention and Tenure ("PRT") Committee. (Id. ¶ 12.) Han has spoken at numerous conferences and events. (Id. at ¶ 17.) In terms of service, he has given of his time both inside and outside UD. (Id. at ¶ 20.)

Han asserts that he was qualified for his position but was given a poor evaluation. (Id. at

-3-

¶¶ 22, 32.) As a result of the poor evaluation, his contract with UD was not renewed. (Id. at ¶ 24.) Also, a white male was hired as an adjunct professor to teach one of his classes, a patent law class. (Id. at ¶ 25.)

Han was hired as a non-tenured faculty member and was required to go through the PRT process. (Id. at ¶ 27.) UDSL appointed six (6) faculty members (the "PRT Committee") to oversee Han's professional development. (Id. at ¶ 28.) The primary purpose of Han's PRT Committee, according to the Faculty Handbook, was the professional development of Han. (Id. at ¶ 29.) Defendants Gerla, Brenner, Cochran, Greene, Howarth and Searcy were the members of Han's PRT Committee. (Id. at ¶¶ 89-90.)

Han was given a poor evaluation by his PRT Committee. (Id. at ¶ 91.) Between August of 2008 and April of 2011, Han's PRT Committee provided only one (1) written evaluation of Han and then recommended that UD no longer employ him. (Id. at ¶ 37.) Han then met with his PRT Committee to explain what he thought were some of the PRT Committee's misunderstandings. (Id. at ¶¶ 38, 39.) However, UD and UDSL elected to ratify the conduct of Han's PRT Committee. (Id. at ¶¶ 42.) Han was informed of the non-renewal of his teaching contract. (Id. at ¶¶ 24, 100.)

Han now alleges that his PRT process was not fair and was not developmental. (Id. at ¶ 43.) He also alleges that his PRT process was a substantial departure from acceptable academic norms and was implemented in bad faith. (Id. at ¶¶ 44-46.)

### RELEVANT LEGAL PROVISIONS

The Defendants seek to dismiss Han's SAC pursuant to Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff

is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993), citing *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987).  Put another way, "The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or merits of the case."  Wright & Miller, *Federal Practice and Procedure*: Civil 2d §1356 at 294 (1990).

When considering a Rule 12(b)(6) motion, a court may consider the complaint and any exhibits attached to the complaint, public records, and items appearing in the defendant's motion to dismiss. The items appearing in the defendant's motion to dismiss may be considered so long as these items are referred to in the complaint and are central to the claims contained in the complaint. *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim has facial plausibility when it pleads factual content that permits the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft*, 556 U.S. at 678. The plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where the facts pleaded do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but has not shown that the plaintiff is entitled to relief. *Id.*

-5-

The Defendants also seek to dismiss Han's SAC pursuant to Fed. R. Civ. P. 12(d) and 56. Rule 12(d) provides that, if matters outside the pleadings are presented on a Rule 12(b)(6) motion and these matters are not excluded by the court, the motion must be treated as a motion for summary judgment under Rule 56. Further, all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

## ANALYSIS

The Defendants make several arguments for dismissal of Han's Complaint. Each will be addressed seriatim.

## EEOC Complaint Timely Filed?

The Defendants first argue that Han's Title VII claims are time-barred. The Title VII claims are time-barred, according to the Defendants, because they were not filed with the EEOC within 300 days of the act of discrimination.

For purposes of consideration of this Motion To Dismiss, Han was required to file a complaint with the EEOC within 300 days after the alleged unlawful employment practice occurred. *Delaware State College v. Ricks*, 449 U.S. 250, 257 (1980). It is undisputed that the latest date that Han was subjected to discrimination by UD was May 11, 2011, making March 6, 2012, the end of the 300-day period.

Han alleges that he filed a charge of race-based and gender-based discrimination with the EEOC on February 21, 2010. (SAC ¶ 53) and that the EEOC confirmed receipt of this charge on March 23, 2012 (Id. at ¶ 54.) However, the only exhibit attached to his FAC and relevant to discrimination charges is Exhibit W - a "Charge of Discrimination" and a "Dismissal and Notice

of Rights."[3]

Han refers to Exhibit W as a "Notice of Right-To-Sue." (SAC ¶ 57.) However, the Charge of Discrimination attached to Han's FAC indicates that the charge was filed on March 23, 2012, and was received by the EEOC Cincinnati Office on March 27, 2012 . (FAC Ex. W.) The "Dismissal and Notice of Rights" also indicates that Han's charge was not timely filed with the EEOC.  (Id.)

In this Charge of Discrimination, Han indicates that he was informed on April 19, 2011, that his teaching contract may not be renewed, and that, on May 11, 2011, "management made its final decision not to renew" his teaching contract. (Id.) Therein, Han asserts gender and race discrimination. (Id.)

Thus, while ¶ 53 of Han's SAC alleges that he filed a charge of race-based and gender-based discrimination with the EEOC on February 21, 2010, Exhibit W belies this allegation. Exhibit W indicates that Han filed his charge of race-based and gender-based discrimination on March 23, 2012, and that this charge was not timely filed.

Based on the only Charge of Discrimination referred to in Han's SAC and attached to Han's FAC, the latest date that discrimination took place was May 11, 2011, and the Charge of Discrimination was filed on March 23, 2012. Thus, Han's SAC reveals that he did not file his EEOC charge within the 300-day requirement. This finding is supported by the only exhibit attached to either of Han's complaints that is relevant to the filing of discrimination charges with the EEOC.

In an attempt to get around this issue, Han asserts in his Memorandum In Opposition that

---

[3]Han's SAC includes no exhibits but, in several paragraphs, the SAC refers to each of the Exhibits attached to his First Amended Complaint ("FAC").

this Court has previously determined that Han's proposed second amended complaint, among other things, eliminates or corrects defective claims. (See doc. #24.) However, this argument is without merit.

First, the Court did not specifically identify the defects in Han's FAC and did not identify which of the defects were corrected by the proposed second amended complaint. Identifying and correcting any defects was Han's duty when he sought to amend.

Second, the Court's statement that Han's proposed second amended complaint, among other things, eliminates or corrects defective claims is based upon Han's assertions in his Memorandum In Opposition to the Defendants' Motion To Dismiss his FAC and not on an analysis of either of Defendants' motions to dismiss. In other words, the Court, at the time, did not analyze Defendants' Motion To Dismiss Han's First Amended Complaint against the pleadings in his proposed second amended complaint.

Pursuant to 42 U.S.C. § 2000e-5(e)(1), Han was required to submit his Title VII claims of discrimination to the EEOC within 300 days of when the alleged discrimination occurred. Han's SAC indicates that he did not file with the EEOC within 300 days of when the alleged act of discrimination occurred. Therefore, Han's Title VII claims are time-barred and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### Title VII Claims Against Individual Defendants?

The Defendants argue that Han's Title VII claims against the individual defendants fail because Title VII does not permit liability to be imposed on Han's coworkers, on any individual who is not Han's employer, supervisor or manager at the time of the discrimination or on any person not named in the prerequisite EEOC charge of discrimination.

Title VII does not allow for the liability of a person or entity other than the "employer." *Wathen v. General Electric Co.*, 115 F.3d 400, 404 (6th Cir. 1997). "Employer" is defined by Title VII as "a person engaged in an industry affecting commerce who has fifteen or more employees… and any agent of such person." *Id.* (quoting 42 U.S.C. § 2000e(b)). The term "agent" is not defined in Title VII but has been interpreted as "an individual who 'serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment.'" *Id.*(quoting *Pierce v. Commonwealth Life Insurance Co.*, 40 F.3d 796, 803 (6th Cir. 1994)). Finally, the "agent" provision in the statutory definition of employer only ensures that employers cannot escape respondeat superior or agency liability. *Genaro v. Central Transport, Inc.*, 703 N.E.2d 782, 785 (Ohio 1999)

The captions of Han's FAC and SAC do not identify any individual defendants. The caption of Han's original Complaint that was removed to this Court identifies McGreal, Gerla, Brenner, Cochran, Greene, Howarth and Searcy as individual defendants.

First, none of the seven individuals named as individual Defendants was named as a respondent in Han's EEOC Charge. (Ex. W.) Thus, pursuant to 42 U.S.C. § 2000e-5(f)(1), these individuals cannot now be sued for Title VII violations.

Second, Defendant McGreal is not specifically identified by name anywhere in Han's SAC. However, the Court takes judicial notice that McGreal became the Dean of UDSL on July 1, 2011. This is after the latest date on which the alleged discrimination occurred. (See Ex. W.)

Han pleads that the new Dean, presumably McGreal, was involved in an attempted mediation after the decision was made by UD and ratified the decision. (SAC ¶¶ 170-83.) Han does not, however, plead that McGreal played a role in the discrimination Thus, McGreal can

hardly be said to have discriminated against Han as an individual.

Third, the remaining six individual Defendants were all members of Han's PRT Committee and, as such, did not serve in a supervisor position over Han. Han's SAC alleges that these six individuals as members of the PRT Committee were his supervisors or managers. (SAC ¶ 29.) However, this is a legal conclusion not supported by the remainder of Han's SAC.

Han alleges that these six individuals were appointed and acting in accordance with the Faculty Handbook. (SAC ¶¶ 27-34.) The Faculty Handbook indicates that the primary purpose of faculty evaluation is continuing professional development. (Ex. Z.) It also lists additional purposes:

> (1) to promote teaching excellence,
> (2) to help the faculty member to improve his or her professional performance,
> (3) to provide feedback for self-assessment,
> (4) to assess the extent of a faculty member's contribution to the fulfillment of the purposes of the University of Dayton,
> (5) to provide additional input to decisions regarding faculty reward, and
> (6) to assist in making intelligent decisions on retention and tenure.

Nowhere in the "General Faculty Policies" section does the Faculty Handbook mention or indicate that promotion, tenure and review committee members are responsible for supervising faculty members. Members of Han's PRT Committee were his co-workers and not his supervisors.

In conclusion, McGeal was not the Dean when the alleged discrimination took place so he cannot be liable. Also, Title VII does not provide for liability of individuals who are not employers or supervisors so the six individual members of Han's PRT Committee cannot be individually liable.

## Title VII and Ohio Discrimination Claims Against Individual Defendants?

-10-

The Defendants also argue that Han's discrimination claims brought pursuant to Ohio Rev. Code § 4112 against the individual defendants fail. Initially, as determined above, McGreal was not present when the alleged discrimination took place so he cannot be liable under Ohio Rev. Code § 4112.

As for the remaining individuals, Ohio Rev. Code § 4112.01(A)(2) defines the term employer as "…any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer." The Ohio Supreme Court has determined that the "acting directly or indirectly in the interest of an employer" language is meant only to ensure that employers cannot escape respondeat superior or agency liability. *Genaro*, 703 N.E.2d at 785.

The Ohio Supreme Court has also determined that individual supervisors and managers are liable under Ohio Rev. Code § 4112(A)(2). *Genaro,* 703 N.E.2d at 787-88. They are liable because they meet the statutory definition of employer and not based upon agency. *Warnsley v. Toledo Board of Education*, No. L-10-1219, 2011 WL 2535021 at *7 (May 27, 2011). However, a co-worker is not individually liable under the definition of employer. *Id.*

In one relevant example, an Ohio Court of Appeals found that a teacher's union that defined the procedure by which teacher leaders were chosen and controlled the composition and selection of members of an interview team did not meet the definition of employer. *Warnsley*, 2011 WL 2535021 at *7. The Court is unable to find and the Parties have not identified cases where Ohio courts have determined that a PRT committee appointed by an employer acts directly or indirectly in the interests of that employer.

Gerla, Brenner, Cochran, Greene, Howarth and Searcy were named as individual

-11-

defendants because they were members of Han's PRT Committee. However, as determined above, the members of Han's PRT Committee were his co-workers and not his supervisors.

In conclusion, McGeal was not the Dean when the alleged discrimination took place so he cannot be liable under Ohio Rev. Code § 4112. Also, Ohio Rev. Code § 4112 does not provide for liability of individuals who are not employers or supervisors so the six individual members of Han's PRT Committee cannot be individually liable.

## Sufficiency of Pleading?

The Defendants argue that the claims that remain after their requested dismissal have not been sufficiently pled in accordance with *Bell Atlantic* and *Twombly*. Han responds that he has alleged sufficient facts to make his claims plausible. The remaining claims are Han's raced-based claim of discrimination asserted against UD pursuant to 42 U.S.C. § 1981 in Count I of his SAC and Han's race-based and gender-based claims of discrimination asserted against UD pursuant to Ohio Rev. Code § 4112.02 in Count III of his SAC.

## Federal Pleading Standard

The current federal pleading standard, applicable here, is set forth by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The liberal pleading standard set forth in Fed. R. Civ. P. 8 requires more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action" does not suffice. *Id.*(quoting *Twombly*, 550 U.S. at 555). Nor does a complaint that offers "negative assertion[s]" absent "further factual enhancement." *Id.*(quoting *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, a complaint must contain sufficient factual pleadings to

-12-

"state a claim to relief that is plausible on its face." *Id.*(quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id.*(citing *Twombly*, 550 U.S. at 556). Yet, where a complaint pleads facts that are "merely consistent with" a defendant's liability, the complaint is short of the line between possibility and plausibility. *Id.*(quoting *Twombly*, 550 U.S. at 557.)

A court is not required to accept as true a legal conclusion couched as a factual allegation. *Id.* Also, bare recitals of the elements of a cause of action supported by "mere conclusory statements" are not enough. *Id.* In sum, where the factual allegations in the complaint permit the court to infer no more than the possibility of misconduct, the complaint has alleged but has not shown that the plaintiff is entitled to relief and the complaint must be dismissed. *Id.*

When analyzing a motion to dismiss, courts may begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* The court then should assume the veracity of the remaining factual allegations and determine whether they plausibly give rise to an entitlement to relief. *Id.*

### Specific Pleading Standard for Remaining Claims

#### Section 4112 Claims

Generally, Ohio courts look to federal case law interpreting Title VII when deciding claims alleging a violation of Ohio Rev. Code § 4112. *Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Commission*, 421 N.E.2d 128, 131 (Ohio 1981). The Supreme Court has determined that a complaint in an employment discrimination lawsuit need not contain specific facts establishing a prima facie case of discrimination under

-13-

*McDonnell Douglas. Swierkiewicz v. Soreman N. A.*, 534 U.S. 506, 511 (2002). The ordinary rules for assessing the sufficiency of a complaint, as set forth above, apply. *Id.* The Sixth Circuit has adopted this standard even after *Bell Atlantic* and *Twombly* were issued. *Pedreira v. Kentucky Baptist Homes for Children, Inc.*, 579 F.3d 722, 728 (6th Cir. 2009).

This Court must, therefore, look to see if Han's SAC establishes a discrimination claim that is plausible on its face. *Id.* While Han is not required to plead a prima facie case, he still must allege facts sufficient to state all of the elements of his discrimination claim. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764-65(4th Cir. 2003); *Benahmed v. BAE Systems Technology Solutions & Services, Inc.*, No. 12-cv-01974, 2012 WL 5426432 at *4 (D.Md. Nov. 6, 2012). Han must plead that he was terminated or otherwise treated less favorably because of his race and/or gender. *Benahmed*, 2012 WL 5426432 at * 4(citing 42 U.S.C. § 2000e-2(a)).

In *Swierkiewicz*, a dismissal was overturned when the plaintiff's complaint detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination. *Id.* at 514. The Supreme Court found that these allegations gave the defendant fair notice of plaintiff's claims and the grounds upon which they rested. *Id.*

Section 1981 Claim

Chapter 42 of U.S.C. § 1981 "prohibits racial discrimination in the making and enforcement of private contracts." *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989)(quoting *Runyon v. McCrary*, 427 U.S. 160, 168 (1976), *superseded by statute on other grounds.* Thus, a § 1981 claim must involve an impaired contractual relationship under which the plaintiff has rights. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). Also, §

-14-

1981 can be violated only by intentional discrimination. *General Building Contractors Association, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982).

### Pleadings Not Entitled To the Assumption of Truth

The Court has carefully reviewed the 438 numbered paragraphs in Han's Complaint. Following is a list of the numbers of those paragraphs that are either procedural in nature or are no more than conclusions and, therefore, not entitled to an assumption of truth: 1-4, 7, 9, 10, 16, 20, 21, 23, 26, 29, 30, 32-34, 41, 43-45, 47, 48, 57-60, 62, 64, 65, 68, 69, 72, 74, 79, 83, 84, 86, 91, 95, 97, 98, 102, 105, 112, 114, 114-19, 126, 132, 156, 157, 164, 165, 183, 189, 200, 211, 216, 226-28, 231, 232, 237, 242, 246, 249, 251, 262, 272, 274, 275, 289, 295, 302-04, 306, 321, 326, 327, 333-35, 344-47, 350-54, 357-60, 363-66, 372, 374-76, 378-80, 382-87, 389-94, 398, 400-02, 404-07, 410-18, 421, and 424-38. The remaining paragraphs will be considered as factual allegations to determine if Han has made claims that plausibly give rise to an entitlement to relief.

### Entitlement To Relief

Disregarding the paragraphs listed above, the Court must next determine if Han's SAC sets forth a plausible raced-based discrimination claim against UD pursuant to 42 U.S.C. § 1981 and plausible race-based and gender-based discrimination claims against UD pursuant to Ohio Rev. Code § 4112.02. Each will be addressed seriatim beginning with the race-based and gender-based discrimination claims brought pursuant to Ohio law. Rather than declining to exercise jurisdiction over the Ohio race-based and gender-based discrimination claims, the Court will address them since they are closely associated with the § 1981 claim and the other federal claims that have already been addressed.

Section 4112 Claims

-15-

Han has alleged that he is a 42-year-old Asian-American male. (SAC ¶ 5.) Therefore, to satisfy his Section 4112 claims, he must make a plausible claim that he was replaced by or treated less favorably than someone who was not a male. He must also make a plausible claim that he was replaced or treated less favorably than someone who was not an Asian-American.

Han alleges that a white male was hired as an adjunct professor to teach the patent law class. (Id. at ¶ 25.) However, hiring an adjunct to teach one class is not a replacement for hiring a tenure-track professor to teach several classes.

Han makes several allegations regarding how he was treated by his PRT Committee. However, his allegations regarding how this treatment is an indication of being treated less favorably do not provide the kind of facts necessary to make his discrimination claim plausible. For example, Han alleges that, on information and belief, the scholarly writings for all of the other non-tenured faculty members have been juried by scholars outside of UD and his was not. (Id. at ¶¶ 109 and 110.) However, he does not identify any of those non-tenured faculty members whose scholarly writings were juried by scholars outside of UD.

Han also asserts that, despite the positive comments that he received about his scholarly writing from those within his field, the PRT Committee refused to consider those comments in the evaluation process. (Id. at ¶ 111.) However, Han does not specifically identify anyone who was treated differently.

Han also asserts that his PRT Committee lied, mischaracterized information and advanced false statements during their evaluation of him. However, again, Han does not specifically identify anyone who was treated differently.

Han also asserts that the PRT Committee submitted its final report to the Dean in which the PRT Committee ignored his request for guidance and falsely stated that he did not approach a

single member to discuss the PRT Committee's concerns. (Id. at ¶¶ 149, 150.) However, again, Han does not specifically identify anyone who was treated differently.

Han also asserts that his PRT Committee members untruthfully indicated that they were unaware of his teaching overload. Even if this could be considered an adverse employment action, Han, again, does not specifically identify anyone who was treated differently.

Han also asserts that his PRT Committee members falsely indicated that they met with him on March 29, 2009. (Id. at ¶¶ 162, 163.) However, again, Han does not specifically identify anyone who was treated differently.

Han also asserts that, despite being made aware of the lies, mischaracterizations and false statements made by his PRT Committee, the new Dean indicated that nothing in the record made him believe that the process was unfair. (Id. at 180.) Even if this could be considered an adverse employment action, Han, again, has not specifically identified anyone who was treated differently.

Han also asserts that, despite being specifically informed of the unfairness of the process, the Dean and UD condoned the behavior of his PRT Committee members. (Id. at ¶ 187.)  Even if this could be considered an adverse employment action, Han, again, has not specifically identified anyone who was treated differently.

Han also asserts that his PRT Committee did not meet certain deadlines. (Id. at ¶¶ 190-96.)  Even if this could be considered an adverse employment action, Han, again, has not specifically identified anyone who was treated differently.

Han also asserts that his PRT Committee failed to follow the University Policy which formed a part of the contract that UD had with him. (Id. at 202.) Even if this could be considered an adverse employment action, Han, again, has not specifically identified anyone who was

treated differently.

Han also asserts that his PRT Committee criticized his teaching despite the overwhelming evidence that demonstrated that he is an outstanding teacher. (Id. at ¶ 215.) Setting aside that this assertion is, at least in part, a conclusion, and even if this could be considered an adverse employment action, Han, again, has not specifically identified anyone who was treated differently.

Han also asserts that his PRT Committee did not consider any of the peer evaluations that he specifically identifies. (Id. at ¶¶ 238-44.) Even if this could be considered an adverse employment action, Han, again, has not specifically identified anyone who was treated differently.

Han also asserts that his PRT Committee members acted in bad faith in reaching their conclusions regarding his teaching abilities. (Id. at ¶¶ 247, 248, 250, 252.) However, Han, again, has not specifically identified anyone who was treated differently.

Han also asserts that his PRT Committee members acted in bad faith in evaluating his scholarship. (Id. at 296-332.) However, Han, again, has not specifically identified anyone who was treated differently.

Han also asserts that his PRT Committee complained about him providing too much service. (Id. at 342.) However, Han, again, has not specifically identified anyone who was treated differently.

Han concludes that he was treated less-favorably than non-Asian employees (id. at ¶ 350) and was treated less-favorably than other similarly-situated female employees (id. at ¶ 357), but he has offered no specifics regarding who those employees were or how they were treated differently. In sum, while Han's employment may have been terminated against his wishes, his

-18-

SAC does not plausibly show that the termination of his employment, or any other adverse employment decision to which he may have been subjected, was a result of illegal discrimination based upon his race or his gender.

Section 1981 Claim

To set forth a plausible raced-based discrimination claim against UD pursuant to 42 U.S.C. § 1981, Han must plausibly plead that he had a contractual relationship with UD and that he was intentionally discriminated against. Han has plausibly pled that he has a contractual relationship with UD. (Id. at ¶¶ 24, 67, 123, 124 125.) However, as determined above, Han has not plausibly pled that UD intentionally discriminated against him.

## Summary Regarding Sufficiency of Pleading

Han's claim of raced-based discrimination asserted against UD pursuant to 42 U.S.C. § 1981 and his race-based and gender-based claims of discrimination asserted against UD pursuant to Ohio Rev. Code § 4112.02 have not been sufficiently pled in accordance with *Bell Atlantic* and *Twombly*. Therefore, pursuant to Fed. R. Civ. P. 12(b)(6), these claims must be dismissed.

## Supplemental Jurisdiction

The Defendants' final argument is that the Court should not exercise supplemental jurisdiction over the claims asserted in Counts IV through XII of Han's Amended Complaint. Han responds that this Court must exercise supplemental jurisdiction because the state law claims in Counts IV through XII of his Amended Complaint cannot be decided until the federal discrimination claims are properly adjudicated. Counts IV through XII of Han's Amended Complaint are state law claims for breach of contract, promissory estoppel, fraud, tortious interference with contract, reliance damages, respondeat superior, bad faith, attorneys' fees and punitive damages.

-19-

In 2011, Han filed the  2011 State Case regarding nearly the same set of facts and circumstances as set forth in the lawsuit that is now before this Court. The 2011 Case included no federal claims. He subsequently amended the 2011 State Case complaint and the Defendants filed motions to dismiss and for summary judgment.

On May 11, 2012, Han filed the "2012 State Case against the same defendants he originally sued in the still pending 2011 State Case and asserted federal and state law discrimination claims with respect to the same set of events. At the same time, Han sought to have his new 2012 State Case consolidated with his original and still pending 2011 State Case. However, the Defendants removed the 2012 State Case to this Court before the state court properly consolidated the 2011 State Case with the 2012 State Case.

The lawsuit that is now before this Court includes the same state law claims as Han's amended complaint in the 2011 State Case that is pending in state court. Further, a motion to stay the 2011 State Case filed by Han has been overruled by the Common Pleas Court of Montgomery County, Ohio. Thus, the Common Pleas Court of Montgomery County, Ohio intends to adjudicate the very same state law claims that are now pending in this Court.

Han's argument that the state law claims cannot be decided until the federal discrimination claims are properly adjudicated is unavailing, at best. Han started the process by filing at least two complaints in state court which made no mention of discrimination claims. Also, the elements of the state law claims are significantly different than the elements of the discrimination claims.

The Court of Common Pleas of Montgomery County, Ohio is in the process of adjudicating Han's state law claims. Thus, there is no need for this Court to do so. Han's state law claims, Counts IV through XII of his Amended Complaint in this case, are dismissed.

**SUMMARY REGARDING MOTION TO DISMISS**

The Defendants' Motion To Dismiss (doc. #26) is GRANTED. Han's Title VII claims are time-barred and are dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

McGeal was not the Dean when the alleged discrimination took place so he cannot be liable. In addition Title VII does not provide for liability of individuals who are not employers or supervisors so the six individual members of Han's PRT Committee cannot be individually liable.

Han's claim of raced-based discrimination asserted against UD pursuant to 42 U.S.C. § 1981 and his race-based and gender-based claims of discrimination asserted against UD pursuant to Ohio Rev. Code § 4112.02 have not been sufficiently pled in accordance with *Bell Atlantic* and *Twombly*. Therefore, these claims are dismissed.

The only claims remaining in Han's SAC are state law claims. The Court declines to exercise jurisdiction over these supplemental claims.

The Court of Common Pleas of Montgomery County, Ohio is in the process of adjudicating these state law claims. Thus, there is no need for this Court to do so. Han's state law claims, Counts IV through XII of his Amended Complaint in this case, are dismissed. Therefore, no claims in Han's SAC remain to be adjudicated by this Court.

**RULE 56(d) MOTION**

Han has filed a Rule 56(d) Motion. (Doc. #13.) Therein, Han argues that matters outside the pleadings were submitted in support of Defendants' Motion To Dismiss so he is entitled to discovery, specifically to challenge the statements by McGreal and Lisa Kloppenburg ("Kloppenburg"). This Motion is fully briefed and ripe for decision

Fed. R. Civ. P. 12(d) provides that:

If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

In this case, the Court did not consider any matters outside of the pleadings. Therefore, Han's Rule 56(d) Motion (doc. #28) is OVERRULED. Finally, the captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE and ORDERED** in Dayton, Ohio this Twenty-First Day of December, 2012.

**s/Thomas M. Rose**

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record